Filed 5/3/22  Foster v. Harrell CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

| | |
|---|---|
| RICKY TYRONE FOSTER, | F083079 |
| Plaintiff and Appellant, | (Super. Ct. No. 19CECG04061) |
| v. | |
| ARLAN L. HARRELL, a Judge of the Superior Court et al., | **OPINION** |
| Defendants and Respondents. | |

<u>**THE COURT**</u>*

APPEAL from judgments of the Superior Court of Fresno County.  Kristi Culver Kapetan, Judge.

Ricky Tyrone Foster, in pro. per., for Plaintiff and Appellant.

Cummings, McClorey, Davis, Acho & Associates, and Sarah L. Overton for Defendants and Respondents Judge Arlan L. Harrell, Judge F. Brian Alvarez, and Judge Alan M. Simpson.

Daniel C. Cederborg, Fresno County Counsel, and Kyle R. Roberson, Deputy County Counsel, for Defendant and Respondent Judge Lisa M. Gamoian.

-ooOoo-

---

*        Before Franson, Acting P. J., Meehan, J. and DeSantos, J.

Plaintiff Ricky Tyrone Foster filed this action under section 1983 of title 42 of the United States Code (section 1983) against three superior court judges and a former deputy district attorney. Foster sought (1) declaratory relief stating each defendant's acts and omissions violated his constitutional rights and (2) injunctive relief vacating orders on his postconviction DNA motions brought under Penal Code section 1405 and granting him a hearing. The trial court sustained defendants' demurrers based on its lack of subject matter jurisdiction and defendants' immunity.

The initial and dispositive issue in this appeal is whether the superior court had subject matter jurisdiction over a section 1983 action that challenges orders entered by the superior court in plaintiff's criminal case. As explained below, the superior court lacked subject matter jurisdiction.

We therefore affirm the judgments of dismissal.

**FACTS**

In 1994, Foster was convicted of serious offenses relating to a carjacking. (*People v. Foster* (1995) 34 Cal.App.4th 766, 768.) The jury found Foster used a firearm during the commission of the offenses. The trial court sentenced Foster "to a total unstayed prison term of life with the possibility of parole plus 12 years." (*Id*. at p. 769.) In 1995, this court affirmed Foster's conviction and sentence. (*Id*. at p. 776.) In this century, Foster's criminal case has generated many appeals and writs, including matters this court has assigned case Nos. F049527, F054991, F056668, F058503, F065550, F069125, F071986, F075422, F075455, F075904, F078583, F078710, F078906, F079060, and F080157.

On December 21, 2016, Foster filed his first motion pursuant to Penal Code section 1405 for postconviction DNA testing. In May 2017, the superior court denied the motion due to improper service. In June 2017, Foster appealed the denial of his motion and this court assigned the appeal case No. F075904 (*People v. Foster* (Mar. 14, 2018)

2.

[nonpub. order]). In March 2018, Foster filed a request for dismissal of the appeal, which this court granted.

Later that March, the superior court filed Foster's motion requesting the appointment of counsel to prepare a motion for postconviction DNA testing. In May 2018, Judge Gary D. Hoff issued an order granting Foster's request for the appointment of counsel. On June 28, 2018, appointed counsel filed a motion to compel postconviction DNA testing pursuant to Penal Code section 1405. The Attorney General's Office and the Fresno County District Attorney's Office did not respond to the motion within 90 days after it was served. Foster describes the absence of a response as a waiver of the right to file a response or a default.

On December 10, 2018, Judge Alan M. Simpson issued an order designating the judicial officer to conduct proceedings on the merits of Foster's motion to compel postconviction DNA testing, which proceedings were to include an order setting the date and time for a hearing on the motion. Foster contends the issuance of this order was an abuse of discretion and it is one of the orders he sought to have vacated by filing this civil lawsuit.

On January 7, 2019, Judge F. Brian Alvarez signed and filed an order denying Foster's motion for DNA testing. On January 23, 2019, Foster filed a petition for writ of mandate challenging the order denying his motion; this court assigned the petition case No. F078710 (*Foster v. Superior Court (Fresno)* (Feb. 13, 2019) [nonpub. order]). On February 13, 2019, we summarily denied Foster's petition for writ of mandate. After the denial of his writ petition, Foster filed a notice of appeal from the order denying his motion on February 25, 2019. This court assigned the appeal case No. F078906 (*People v. Foster* (July 10, 2019) [nonpub. order]). On July 10, 2019, this court dismissed the appeal as taken from a nonappealable order, stating:

> "Penal Code section 1405, subdivision (k) provides that the denial of
> motion for postconviction DNA testing is not appealable. That section

3.

further provides that the order may be reviewed by writ of mandate filed within 20 days of the superior court's decision. This court notes that appellant previously filed a writ of mandate challenging the superior court's January 7, 2019, order on January 23, 2019, and this court denied the petition for writ of mandate on February 13, 2019, in *Foster v. The Superior Court of Fresno County*, case No. F078710."

Also in February 2019, Foster filed a petition for writ of habeas corpus in the Fresno County Superior Court, case No. 19CRWR684731. On June 25, 2019, Judge Arlan L. Harrell denied the writ petition without holding a hearing. Foster contends the superior court abused its discretion and violated his rights to due process when it denied the writ petition. Foster contends he would have obtained relief if an evidentiary hearing had been held. Judge Harrell's order denying Foster's writ petition and Judge Alvarez's order denying his motion for DNA testing are the other two orders Foster seeks to have vacated in this civil lawsuit.

Based on Foster's inability to obtain relief through appeals or writ petitions, Foster contends a section 1983 action is the sole remedy now available to secure his constitutional right to due process and obtain a hearing on his motion for postconviction DNA testing pursuant to Penal Code section 1405.

## PROCEEDINGS

On November 1, 2019, Foster filed a civil rights complaint under section 1983. On December 9, 2019, Foster filed a first amended complaint (FAC) against a former deputy district attorney, Lisa M. Gamoian,[1] and Judges Simpson, Alvarez, and Harrell. The FAC is the operative pleading for purposes of this appeal.

On January 6, 2021, Foster filed proofs of service stating the summons, "CIVIL RIGHTS COMPLAINT BY A PRISONER," and other documents had been served on Judge Harrell, Judge Alvarez, and Judge Gamoian by substitute service on an executive secretary of the Fresno County Superior Court on December 8, 2020. The proofs of

---

[1] Gamoian was elected to the office of superior court judge for Fresno County and began serving in that office in 2015.

4.

service were completed by the registered California process server who served the papers. The proofs of service do not explicitly state whether the complaint served on the defendants was the original pleading or the FAC.

On January 14, 2021, Foster filed requests for entry of default on mandatory Judicial Council form CIV-100 against the three defendants who had been served. Foster completed item 1.a. on the forms to refer to a complaint filed on November 1, 2019, which was the date his original complaint was filed. In the box at the bottom of the forms designated for court use only, the deputy clerk of the superior court checked the box stating "Default NOT entered as requested (*state reason*)" and then wrote: "line #1.a. is incorrect."

On January 22, 2021, Judges Harrell, Alvarez, and Simpson filed a demurrer to the FAC that asserted the superior court lacked subject matter jurisdiction over the FAC and the FAC against them was barred by judicial immunity. On February 8, 2021, Judge Gamoian filed a demurrer to the FAC that also asserted the superior court lacked subject matter jurisdiction and, thus, could not grant the relief requested.

On February 8, 2021, Foster filed objections to the defendants' demurrers, contending the defendants were in default and the late-filed demurrers must be stricken from the record. Foster argued the defendants had not filed a responsive pleading withing the 30 days allowed and, as a result, he was entitled to have his requests for default entered.

On February 16, 2021, Foster filed objections to the clerk of court setting a default hearing on July 14, 2021, which he characterized as an abuse of the clerk's ministerial duty and contrary to the Trial Court Delay Reduction Act (Gov. Code, § 68600 et seq.).

In March 2021, Foster filed a notice of stay of proceedings asserting judicial misconduct and racial bias. Foster stated he had filed a petition for writ of mandate with the court of appeal seeking to vacate the clerk's refusal to enter defaults against the defendants.

5.

On June 10, 2021, the defendants filed replies to Foster's papers. Judge Gamoian asserted service of the summons on her was defective and, therefore, her demurrer was timely filed. She also asserted Foster failed to oppose the merits of her demurrer and, as a result, he had forfeited any argument against the grounds raised in the demurrer. The reply of Judges Harrell, Alvarez, and Simpson asserted Foster was not entitled to a default against any defendant because (1) Foster had not served the FAC, (2) his request for default sought to have default entered on the original complaint, and (3) his request for default was properly rejected as defective by the clerk. Their reply also asserted the trial court lacked the subject matter jurisdiction to grant Foster the relief sought in his FAC—that is, an order vacating the orders entered in his criminal case.

On July 8, 2021, the superior court held a hearing on the pending matters. Foster attended using CourtCall. After hearing argument, the court adopted its tentative ruling to sustain the demurrer of Judges Harrell, Alvarez, and Simpson without leave to amend based on lack of subject matter jurisdiction and judicial immunity. An unsigned law and motion minute order reflecting the court's order was filed later that day.

On July 15, 2021, Foster filed a notice of appeal that listed July 8, 2021, as the entry date for a judgment of dismissal after an order sustaining a demurrer. On July 16, 2021, the superior court signed and filed an order of dismissal and judgment in favor of Judges Harrell, Alvarez, and Simpson. On July 22, 2021, the superior court signed and filed an order of dismissal and judgment in favor of Judge Gamoian. We liberally construe Foster's notice of appeal as having been taken from the subsequently entered judgments. (See *Vitkievicz v. Valverde* (2012) 202 Cal.App.4th 1306, 1310, fn. 2 [notice of appeal construed as being taken from order of dismissal filed six weeks after the notice of appeal].)

**DISCUSSION**

I.  SUBJECT MATTER JURISDICTION

   A.  General Principles

The concept of subject matter jurisdiction refers to the inherent authority of the court involved to deal with the case or matter before it.  (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 196.)  When a superior court lacks subject matter jurisdiction, it has no power to hear or determine the case.  (*Ibid*.)  Any judgment or order rendered by a court without subject matter jurisdiction is void.  (*Ibid*.)

A superior court's lack of subject matter jurisdiction generally cannot be forfeited, waived, or the subject of invited error or estoppel.  (*Drink Tank Ventures LLC v. Real Soda in Real Bottles, Ltd.* (2021) 71 Cal.App.5th 528, 543.)  In other words, the parties may not confer subject matter jurisdiction on a court by consent, waiver, agreement, acquiescence or estoppel.  (*Ibid*.)  Furthermore, the lack of subject matter jurisdiction may be raised whenever it comes to the court's attention, including for the first time on appeal.  (*Ibid*.)

The foregoing principles are important in this appeal because, if the superior court lacked subject matter jurisdiction, any default it entered would have been void.[2]  Foster's own argument recognizes the importance of jurisdiction.  Both below and in this court, he argued that the superior court *lost its jurisdiction* when the deputy clerk improperly denied his request for entry of default.  This argument assumes the superior court had jurisdiction in the first place.  Here, we examine Foster's assumption and address whether the court ever had subject matter jurisdiction over the section 1983 action.

---

**2**      A void default could have been challenged by a motion to set aside the default pursuant to Code of Civil Procedure section 473, subdivision (d), which provides in part: "The court may, upon motion of the injured party, or its own motion, … set aside any void judgment or order."

B.     Authority to Vacate an Order of the Superior Court

We frame the issue of subject matter jurisdiction as follows:  Does a superior court have subject matter jurisdiction over a section 1983 action that seeks an injunction vacating orders that the superior court entered in the plaintiff's criminal proceeding?

Initially, we note that the principles established in *Heck v. Humphrey* (1994) 512 U.S. 477 (*Heck*) do not directly control the issue presented by Foster's appeal because (1) *Heck* involved a state prisoner seeking *damages* in a section 1983 suit and (2) *Heck* was concerned with a judgment in the section 1983 action that would be inconsistent with the conviction or sentence in the prisoner's criminal case.  Here, Foster is seeking declaratory or injunctive relief, not damages.  Also, he is seeking to explicitly overturn orders dealing with the motion in his criminal case for DNA testing.

In *Heck*, the United States Supreme Court stated that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, [citation].  A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.  Thus, when a state prisoner seeks damages in a § 1983 suit, the [trial] court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.  But if the [trial] court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." (*Heck*, *supra*, 512 U.S. at pp. 486–487.)

8.

The favorable termination requirement set forth in *Heck* and recognized in *Yount v. City of Sacramento* (2008) 43 Cal.4th 885, has been extended to section 1983 actions seeking declaratory relief that, if successful, would imply the invalidity of prison administrative decisions that result in the forfeiture of good-time credits. (*Edwards v. Balisok* (1997) 520 U.S. 641, 643–647.) The rationale underlying *Heck* and *Balisok* emphasizes the importance of using procedures established by Congress, such as pursuing a writ of habeas corpus, to attack the validity of a conviction or the length of confinement. (*Heck*, *supra*, 512 U.S. at p. 482.) Given the established procedures of appeal and habeas corpus, the court considered it unwise to recognize section 1983 actions as a vehicle for impliedly challenging criminal convictions or sentences.

Here, Foster's 1983 action does not *imply* the invalidity of orders that (1) were entered in his criminal case and (2) relate to his motion for postconviction DNA testing. Instead, he takes the bolder step of *explicitly* seeking the invalidation of orders entered in his criminal proceeding. We conclude his novel theory that a section 1983 action may be used to invalidate orders entered in a state criminal proceeding will not be recognized by federal courts or the California Supreme Court. Therefore, we further conclude a superior court does not have subject matter jurisdiction over such a claim.

As a second reason for concluding the superior court does not have jurisdiction in a civil proceeding to direct an order entered in a criminal proceeding be vacated, we refer to the general rule that one trial judge cannot reconsider and overrule an order of another trial judge. "For one superior court judge, no matter how well intended, even if correct as a matter of law, to nullify a duly made, erroneous ruling of another superior court judge places the second judge in the role of a one-judge appellate court." (*In re Alberto* (2002) 102 Cal.App.4th 421, 427.) In other words, "because a superior court is but one tribunal, an order ' " ' "made in one department during the progress of a cause can neither be ignored nor overlooked in another department …." ' " ' " (*Id.* at p. 428.) In short, one member of a superior court may not sit in review on the actions of another member

9.

of the same court.  (*Id*. at pp. 427–428.)  That jurisdiction resides with the appellate courts.

In summary, we conclude a superior court lacks subject matter jurisdiction over a section 1983 action that seeks to invalidate orders made in a criminal case by that superior court.

## DISPOSITION

The judgments are affirmed.  The parties shall bear their own costs on appeal.